**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Gary Sanchez

    v.                                Case No. 15-cv-381-JD

United States Attorney General,
Loretta Lynch, et al.[1]


**O R D E R**


Before the court is federal prison inmate Gary Sanchez's complaint (doc. no. 1), asserting claims of medical malpractice and negligence under the Federal Tort Claims Act ("FTCA") and state law, and violations of his federal constitutional rights under 42 U.S.C. § 1983 and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).  The matter is before the court for preliminary review pursuant to 28 U.S.C. § 1915A and LR 4.3(d)(1).

---

[1]The court construes the complaint to name the following defendants: the United States; United States Attorney General Loretta Lynch; Federal Bureau of Prisons Director Charles Samuels; the Federal Bureau of Investigations; Immigration and Customs Enforcement; United States Marshals Service; New York City Police Department; Metropolitan Detention Center-Brooklyn ("MDC-Brooklyn"); MDC-Brooklyn Nurse Maria Dilone, R.N.; Federal Correctional Institution-Berlin ("FCI-Berlin") Warden E.L. Tatum; New York Downtown Hospital ("NYDH"); and NYDH Dr. Robert Pae, M.D.

Preliminary Review Standard

This court undertakes a preliminary review of in forma pauperis prisoner claims, pursuant to 28 U.S.C. § 1915A, 28 U.S.C. § 1915(e)(2), and LR 4.3(d)(1), to determine whether the action may proceed.  In determining whether a pro se complaint states a claim, the court construes the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).  Disregarding legal conclusions, the court considers whether the factual content in the complaint and inferences reasonably drawn therefrom, taken as true, state a claim to relief.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102-03 (1st Cir. 2013) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).


Background

Sanchez was arrested on January 9, 2013, in New York, by officers of a federal joint task force of the Federal Bureau of Investigations ("FBI"), Immigration and Customs Enforcement ("ICE"), the United States Marshals Service ("USMS"), and New York City Police Department ("NYPD").  Sanchez alleges that the arresting officers twisted his left arm as they pulled him out of a car and threw him on the ground, and then beat him with police batons, although neither Sanchez nor the others in the

2

car had weapons, and Sanchez was complying with the officers'
orders to put his hands up.  Sanchez asserts that a surgically-
repaired old break in his left elbow broke again because of the
officers' use of excessive force in arresting him.

Following his arrest, Sanchez was held pretrial at the
Metropolitan Detention Center in Brooklyn, New York ("MDC-
Brooklyn"), where Nurse Maria Dilone completed a health
screening of Sanchez.  In response to Sanchez's complaints about
elbow pain and his concern for his broken elbow, Sanchez
alleges, Dilone simply said he needed to sign up for sick call.

On January 15, 2013, MDC-Brooklyn health clinic provider
Soroya Rosa examined Sanchez's elbow, and noted that he appeared
in distress from pain.  Rosa prescribed Naproxen for pain, and
issued an order for an x-ray of Sanchez's elbow.  See Compl.
(doc. no. 1), at 23-24.

Sanchez has alleged that a "Bikman" Hospital orthopedic
surgeon ordered "immediate surgery" when he was seen at that
facility about two weeks after his arrest.  Id. at 112.  On
January 18, 2013, Sanchez was x-rayed at New York Downtown
Hospital ("NYDH") on the order of orthopedic surgeon Dr.
Geoffrey Phillips.  Id. at 40.  NYDH radiologist K. Meghan
Doherty noted a clinical diagnosis of "hardware failure," and

reported her findings that the x-ray showed a possible "nonunion" in the olecranon, the bony prominence in Sanchez's elbow that had been surgically repaired in the past.  Id. at 40. She recommended that Sanchez's providers follow up on her findings by correlating them with his clinical history and prior x-rays, if any.  Id.  An exhibit to the complaint indicates that MDC-Brooklyn physician Dr. Michael Borecky reviewed the radiologist's report on February 22, 2013.  Id.

An x-ray ordered by Dr. Robert Pae at Kingsbrook Jewish Medical Center on May 1, 2013, showed an "incomplete union" in Sanchez's left olecranon.  Id. at 39.  Dr. Pae performed surgery on Sanchez at NYDH on June 10, 2013, to repair Sanchez's elbow and remove the broken hardware.  NYDH Dr. Andrew Hanflik assisted.

Sanchez alleges that Dr. Hanflik recommended "preventive and rehabilitative care" for Sanchez that he never received. Sanchez asserts that because he did not receive a timely operation after his arrest, corrective surgery, or post-surgical physical therapy, his left arm is now painful and shorter than his right arm, and he is permanently disabled.

Sanchez was incarcerated at the Federal Correctional Institution, Ray Brook, New York ("FCI-Ray Brook"), for a period

of time following his November 2013 sentencing.  In September

2014, approximately one month after Sanchez's transfer to the

Federal Correctional Institution in Berlin, New Hampshire ("FCI-

Berlin"), Sanchez filed administrative claims with the Federal

Bureau of Prisons ("BOP"), asserting that the arresting

officers, using excessive force, had broken his previously

injured arm on January 9, 2013, and that the USMS, MDC-Brooklyn,

and FCI-Berlin officials had negligently and deliberately

delayed providing medical care for his arm.  FCI-Berlin Warden

Tatum and supervisory BOP officials denied Sanchez's claims as

to the care he received in BOP facilities.  Sanchez filed this

action thereafter.


## Discussion

I.    FCI-Berlin

      A.    *Bivens* Claims

      Sanchez asserts Bivens claims relating to the failure of

FCI-Berlin health care providers to provide treatment for his

arm, and FCI-Berlin Warden Tatum's denial of Sanchez's

administrative claims relating to his medical care.  Bivens

provides a remedy for federal inmates asserting a violation of

their Eighth Amendment rights, relating to the medical care that

they have received in prison.  See Carlson v. Green, 446 U.S. 14, 20 (1980).  To state a claim for relief that may be actionable under Bivens, the inmate must allege facts showing that prison officials, with deliberate indifference to a substantial risk of serious harm, have delayed or denied the inmate treatment for a serious medical need.  See Farmer v. Brennan, 511 U.S. 825, 834-35 (1994); Cordell v. Howard, 879 F. Supp. 2d 145, 155 (D. Mass. 2012).

Sanchez has alleged that he arrived at FCI-Berlin in August 2014 more than a year after the June 2013 surgery.  The records attached to the complaint show that Sanchez has had medical appointments scheduled for the purpose of evaluating his left arm, since his arrival at FCI-Berlin.  That Sanchez's left arm continues to be painful and may be permanently disabled does not demonstrate that his serious medical needs have not been met at FCI-Berlin.  Furthermore, Sanchez makes no factual allegations suggesting that FCI-Berlin Warden Tatum or any other FCI-Berlin official or medical provider knew that the failure to prescribe physical therapy or corrective surgery at this time has exposed Sanchez to a substantial risk of serious harm.  Thus, nothing in the complaint states facts setting forth a viable Eighth Amendment claim as to any FCI-Berlin defendant.

B.  <u>FTCA Claims</u>

Sanchez asserts FTCA claims relating to the failure of FCI-Berlin health care providers to provide rehabilitative therapy or corrective surgery for his arm, and FCI-Berlin Warden Tatum's denial of his administrative claims relating to his medical care.  "The FTCA waives the sovereign immunity of the United States with respect to tort claims, <u>see</u> 28 U.S.C. § 2674, and provides the exclusive remedy to compensate for a federal employee's tortious acts committed within his or her scope of employment."  <u>Roman v. Townsend</u>, 224 F.3d 24, 27 (1st Cir. 2000).

Here, the complaint does not allege facts sufficient to establish the causal connection that is necessary to state a tort claim with respect to Sanchez's injuries, as those injuries are alleged to have pre-dated Sanchez's arrival at FCI-Berlin. Moreover, no allegations in the complaint suggest that any person at the FCI-Berlin has failed to meet the applicable standard of care under the circumstances alleged.  Lacking such allegations, the complaint fails to state a claim under the FTCA, relating to the acts or omissions of any FCI-Berlin officer or health care provider.  <u>Cf.</u> <u>Taylor v. United States</u>, 951 F. Supp. 298, 303 (D.N.H. 1996) (elements of tort claim).

Accordingly, the FTCA claims relating to FCI-Berlin should be
dismissed for failure to state a claim upon which relief can be
granted.

II.  <u>Attorney General and BOP Director</u>

Viable <u>Bivens</u> claims asserted against the Attorney General
and the BOP Director cannot be based on a theory of vicarious
liability.  <u>Iqbal</u>, 556 U.S. at 676 ("Government officials may
not be held liable for the unconstitutional conduct of their
subordinates under a theory of respondeat superior").  Nothing
in the complaint suggests that Attorney General Lynch or
Director Samuels have been aware of, or have been involved in
any decision-making concerning Sanchez's arrest and medical
care.  To the extent Sanchez asserts <u>Bivens</u> claims against
Attorney General Lynch or Director Samuels based on respondeat
superior, those claims should be dismissed.

Furthermore, the acts and omissions of Lynch and Samuels
alleged in the complaint, with respect to Sanchez's
incarceration in particular BOP facilities, do not state claims
for relief.  Decisions regarding inmate classification and
placement are discretionary functions that are not the proper
subject of an FTCA claim.  <u>See</u> 28 U.S.C. § 2680(a) (FTCA waiver

of sovereign immunity does not apply to discretionary acts); see

also Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir.

2003) ("decisions with regard to classification of prisoners,

assignment to particular institutions or units . . . must be

viewed as falling within the discretionary function exception to

the FTCA, if penal institutions are to have the flexibility to

operate").  Sanchez's claims regarding his placement in any BOP

institutions should be dismissed for failure to state a claim.


III. Venue

     The remaining allegations in the complaint appear to state

one or more claims for relief.  Venue as to those claims,

however, is not appropriate in the District of New Hampshire.

     Venue is appropriate in the judicial district where all of

the defendants reside, or where a substantial part of the events

giving rise to the plaintiff's claims occurred.  28 U.S.C.

§ 1391(b).  Where the defense of improper venue is "'obvious

from the face of the complaint and no further factual record is

required to be developed,'" the court may, sua sponte, dismiss

the case.  Cox v. Rushie, No. CA 13-11308-PBS, 2013 U.S. Dist.

LEXIS 86794 at *14, 2013 WL 3197655 at *4 (D. Mass. June 18,

2013) (quoting Trujillo v. Williams, 465 F.3d 1210, 1217 (10th

Cir. 2006)); see also Wilkinson v. Sec'y, Fla. Dep't of Corrs.,
622 Fed. Appx. 805, 809 (11th Cir. Fla. 2015) (court may dismiss
a matter, sua sponte, for defective venue, pursuant to 28 U.S.C.
§ 1915, after providing plaintiff with opportunity to object).

If this Report and Recommendation is accepted, the case
will be stripped of any substantial connection to New Hampshire,
apart from Sanchez's present incarceration at FCI-Berlin.  The
claims that would remain in the case are all asserted against
defendants who likely reside in New York, for acts and omissions
alleged to have occurred in New York.  All of the relevant
evidence and non-party witnesses are likely to be found in New
York.  Accordingly, venue would no longer be appropriate in the
District of New Hampshire.


IV.   Transfer to Southern District of New York

This court may transfer a case to another district court
where venue is proper, in the interest of justice or for the
convenience of the parties.  See 28 U.S.C. §§ 1406(a); 1412.
Sanchez was arrested in a part of New York (the Bronx) located
within the Southern District of New York, and Sanchez's criminal
case was docketed in that court.  That court is located
relatively close to each of the facilities in Brooklyn (within

10

the Eastern District of New York), where many of the incidents
at issue are alleged to have occurred.  A transfer of the
remaining claims in this matter to the Southern District of New
York, in lieu of a dismissal of those claims without prejudice,
would appear to be appropriate here.  Accordingly, this court,
upon accepting this Report and Recommendation, should transfer
the remainder of the case to the Southern District of New York,
unless plaintiff, in objecting to this Report and
Recommendation, shows cause why the matter either should not be
transferred at all, or should be transferred to the Eastern
District of New York.

<u>Conclusion</u>

   For the foregoing reasons, the magistrate judge recommends
as follows:

   1.   The district judge should dismiss all <u>Bivens</u>
   claims asserted against, and all FTCA claims arising out of
   the acts or omissions of, Attorney General Lynch, BOP
   Director Samuels, and FCI-Berlin Warden Tatum.  The court
   should thereafter terminate FCI-Berlin Warden Tatum,
   Attorney General Lynch, and BOP Director Samuels as
   defendants.

2.    If this Report and Recommendation is accepted, the district judge should direct the Clerk's Office to transfer the case that remains to the Southern District of New York, for further proceedings.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Garayalde-Rijos v. Mun. of Carolina, 747 F.3d 15, 21-22 (1st Cir. 2014).


_____
Andrea K. Johnstone
United States Magistrate Judge

February 17, 2016

cc:  Gary Sanchez, pro se